UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GUSTER,

        Petitioner,

v.

                                    Case Number 07-11733-BC
                                    Honorable Thomas L. Ludington

KENNETH MCKEE,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Michael Guster seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in Genesee County Circuit Court of one count of third-degree criminal sexual conduct ("CSC"), Mich. Comp. Laws § 750.520d(1)(b), and sentenced to 95 months to 15 years imprisonment. Petitioner's conviction was affirmed on appeal, *People v. Guster*, No. 256196, 2005 WL 2171434 (Mich. Ct. App. Sept. 8, 2005), and the Michigan Supreme Court denied leave to further appeal. *People v. Guster*, 712 N.W.2d 162 (2006).

Petitioner thereafter filed the present habeas petition with this Court, asserting the following claims as grounds for relief:

    I.    Mr. Guster demanded a polygraph test pursuant to MCL 776.21(5). The district judge ordered a polygraph and ordered the examiner to ask four specific questions. The examiner failed to ask the four questions. Instead, he asked more then 30 questions, including questions about bizarre, unrelated sexual behavior, and then determined that Mr. Guster was not being truthful. The circuit court judge refused to order a second test. Mr. Guster is entitled to a reversal of his conviction.

    II.       Only a few hours before his interrogation, Petitioner had consumed large quantities of alcohol and large quantities of crack cocaine. Sergeant Alan Edwards interrogated Petitioner while Petitioner was still intoxicated. The trial court erred where it refused to suppress the statement made to the officer. Petitioner is entitled to a reversal of his conviction.

    III.      Prior to and during the trial, Judge Fullerton made repeated statements conveying her opinion that Mr. Guster had committed the charged crimes. The trial judge further erred where she made prejudicial comments about the living arrangements of Petitioner. The trial court denied Petitioner a fair trial. The conviction should be reversed.

    IV.      The cumulative effect of individual errors made in this case prejudiced Petitioner to such an extent that even if the evidence of guilt is overwhelming, he was denied a fair trial. The conviction should be reversed.

Respondent has filed an answer to the petition contending that it should be denied. Based on the discussion that follows, the petition will be denied and Petitioner will be denied a certificate of appealability and leave to proceed in forma pauperis on appeal.

I

Petitioner's conviction arises from his sexual conduct with Patricia Angle, his girlfriend of nine years, in Flint, Michigan, in November 2003. The following facts are taken from Petitioner's brief on direct appeal, and do not appear to be disputed by Respondent; to the extent that they are consisted with the record, they will be adopted:

> The Genesee County Prosecutor charged Michael Guster with three crimes arising from sexual activity with his girlfriend, Patricia Angle. The prosecutor alleged that on November 11, 2003, Mr. Guster committed criminal sexual conduct (CSC) 1st degree (MCL 750.520b(1)(f)), on November 10 he committed CSC 3rd degree (MCL 750.520d(l)(b)) and on November 8 he committed assault with intent to commit criminal sexual conduct involving penetration (MCL 750.520g(l)).
>
> Throughout the proceedings, Mr. Guster maintained that Ms. Angle consented to any and all sexual activity.
>
> Prior to the preliminary examination, the defendant asserted his right to a polygraph examination pursuant to MCL 776.21(5). The trial court ordered that the Flint Police Department administer a polygraph examination to Mr. Guster. (The written order does not appear in the court file, nor do we have a transcript of a hearing at which

the judge spoke such an order. However, subsequent statements of the district court judge make clear that such an order was given.) Additionally, the parties agreed upon four questions to be asked of Mr. Guster and the precise language to be used. The district court judge ordered that these questions, and only these questions, be asked.

The polygraph examination was taped. The only transcript of the examination that appears in the record was prepared in the form of an affidavit by attorney Richard Ponsetto at the request of Mr. Guster's attorney.

The questions that the district court judge ordered the examiner to pose to Mr. Guster were as follows:

1. Did you ever put a bottle in Patricia's vagina?
2. Did you ever force Patricia to have forced oral sex with you?
3. Did you ever threaten Patricia that you would break her neck if she didn't perform oral sex on you?
4. Did you ever have forced sex with Patricia?

The examiner administered the test but failed to ask questions 2, 3 or 4. The examiner asked more than 30 questions related to the incident and to sexual conduct. The questions included bizarre inquiries into completely unrelated sexual matters. For example, the examiner asked "Did you ever have sex with animals?" (Affidavit of Richard T. Ponsetto at 18:45:46). Moreover, the police used the occasion to conduct interviews before and after the polygraph. The polygrapher concluded that Mr. Guster had not been truthful. Unfortunately, the record does not reflect whether the supposed lies pertained to a relevant question, or to one or more of the unrelated questions.

Counsel for Mr. Guster objected to the polygraph as conducted. He moved for dismissal. (PE 1/16/04 at 25). The district judge instructed the defendant to file a motion and brief on the issue. Counsel filed a motion and renewed his request for dismissal of the charges. (PE 2/10/04; PE 3/2/04).

The district court judge ultimately found that the polygrapher violated the court's order with respect to the conduct of the polygraph examination. The judge urged defense counsel to file a show cause motion against the examiner. However, the district judge ruled that the violation of its order and the bind over decision were two separate matters. (PE 3/5/04 at 8).

Based upon testimony given by the complaining witness, the district judge bound the matter over with respect to the incidents of November 8 and November 11. The district judge dismissed the count relating to activity on November 10.

The prosecutor filed a *Goecke* motion seeking the reinstatement of the count relative to November 10, 2003 and seeking the escalation of the assault with intent charge to CSC third degree. Judge Fullerton granted both requests. (4/15/04 at 19) The

trial court also ordered the prosecutor to amend the information such that the counts would be listed chronologically.

The defendant moved for a mistrial based upon failure of the government to conduct a polygraph as ordered by the district court. Judge Fullerton denied the motion. The prosecutor conceded that she did not plan to introduce any statements made by Mr. Guster during the polygraph examination or related interviews. Judge Fullerton then agreed to suppress any statements made by Mr. Guster to the polygraphist. (4/15/04 at 27)

Mr. Guster filed a Motion to Suppress his statements to the police, arguing that the statements were not voluntarily made. In particular, he argued that he was intoxicated from alcohol and/or drugs at the time of the interrogation by Sergeant Edwards. (4/15/04 at 29) Sergeant Alan Edwards testified that he interrogated Mr. Guster. The Sergeant stated that Mr. Guster did not appear intoxicated. (4/15/04 at 36) However, Mr. Guster told the Sergeant that he had been drinking. (4/15/04 at 37) Further, Mr. Guster told the Sergeant that he drank so much that he blacked out. (4/15/04 at 44)

At trial, Sergeant Edwards testified that, indeed, the complaining witness had informed him that Mr. Guster "bad been drinking heavily recently." (TT2 466) He also acknowledged that Mr. Guster "may have been under the influence" during the interrogation. (TT2 489)

Mr. Guster testified that he drank excessively and smoked two grams of crack cocaine with the complainant. (4/15/04 at 51)

The trial court denied the motion to suppress. (4/15/04 at 88)

The record in the possession of the undersigned does not reflect the defendant's request for a second polygraph. However, it is clear that such a request was made. At the April 15, 2004, motion hearing, the trial court stated "I'm also not signing the polygraph order. I've changed my mind. There's no point in it and there's already been a polygraph and there's nothing that needs to be investigated . . ." (4/15/04 at 88)

During voir dire, the trial court informed the potential jurors that low-income people live at the Berridge Hotel (Mr. Guster's residence) and that the hotel is close to services such as Community Mental Health. (TT1 34) The trial court also informed thc jurors that the tenants at the Bcrridge Hotel "have some disabilities or other problems in life." (TT1 74)

The trial court consistently referred to Patricia Angle, the complaining witness, as "the victim." (TT1 37) The trial court told the jury that "Ms. Angle is the victim." (TT1 39)

Counsel for Mr. Guster objected to the court's persistent use of the term "victim" in reference to Ms. Angle. Counsel emphasized that "whether or not the complaining witness is a victim is a question of fact for the jury." (TT2 272) The trial court

dismissed this objection and stated her intention to continue calling Ms. Angle the victim. (TT2 272) The trial court then sua sponte instructed counsel to desist from stating that Ms. Angle "cried rape." "I do not appreciate you keep calling that she's coming out of her room crying rape . . . and I'm not going to have you doing that anymore." (TT2 272)

During voir dire, the trial judge referred to "this type of case involving criminal sexual conduct." (TT1 41) The judge told the jury that "we are dealing with criminal sexual conduct and it's gonna be involved (sic) graphic details unfortunately of what happened in this case." (TT1 90)

Upon returning from a break during the first day of trial, the judge informed the jury that she had been doing mock trials with high school children for "Law Day." The judge also informed the jury that the assistant prosecutor was coaching one of the teams. (TT1 172)

At trial, the complaining witness testified that she and Mr. Guster had been romantically involved and living together for nine years. Due to financial and other difficulties, they had moved from one residence to another during those years. During these nine years, Ms. Angle was in love with Mr. Guster. He brought her flowers every week. (TT2 365) They had a "perfect" relationship, at least at the beginning. (TT2 366)

They ended up living at the Berridge Hotel. Mr. Guster worked at a factory and Ms. Angle worked as a maid at the hotel.

At trial, Ms. Angle claimed that on November 8, 2003, Mr. Guster forced her to perform fellatio. (TT2 377-78) He then allegedly thrust his fingers into her vagina. (TT2 378-79) She claimed that Mr. Guster raped her anally while she begged him to stop. (TT2 380-81) She claimed that he forced her to perform fellatio all night until he passed out. (TT1 381-82)

Ms. Angle claimed that on November 10, 2003, Mr. Guster forced her to perform fellatio. (TT2 391) He allegedly strangled her until she nearly fell unconscious. (TT2 392)

Ms. Angle claimed that on November 11, 2003, Mr. Guster again forced her to perform fellatio. (TT2 397) She claimed that he then penetrated her vagina with a Peppermint Schnapps bottle. (TT2 399-402) Ms. Angle testified that Mr. Guster threatened to penetrate her anus with the bottle and she then fled naked from the room. (TT2 403)

The prosecutor called two hotel employees - William Phipps and Gay Montgomery to testify that Ms. Angle came running naked into the hotel office complaining that Mr. Guster raped her. Mr. Phipps testified that Ms. Angle accused Mr. Guster of raping her in the anus with a wine bottle. (TT1 219)

The prosecutor called several police officers. Officer Twanda Plair testified that she arrived first on the scene and found Ms. Angle in the office. Plair testified that Ms.

Angle accused Mr. Guster of sodomizing her with a bottle and that she complained of rectal pain. (TT1 146-48)

Flint Police Officers Eric Eads and Mark Peck testified to kicking in Mr. Guster's door and seeing nobody in the room. (TT2 298) They found Mr. Guster under the bed. The officers testified that Mr. Guster resisted arrest.

Sergeant Alan Edwards testified that he interrogated Mr. Guster. According to Edwards, when asked about various allegations, Mr. Guster claimed that he "blinked out" and could not remember. (TT2 478-79) Mr. Guster admitted to drinking excessively. (TT2 478)

Doctor Michael Jaggi, the Emergency Room physician who treated Ms. Angle following the incident, testified regarding the complainant's injuries. She had a contusion to the vulva, an abrasion on the face and an abrasion on the leg. (TT1 177) The doctor testified that based upon his examination, he could not conclude that an assault had taken place. (TT1 188) The external vaginal exam was unremarkable. (TT1 186) There were no problems with the cervix. (TT1 186) There was no bleeding anywhere. (TT1 188) She was not in acute distress. (TT1 186) She was treated and released. (TT1 191)

Mr. Guster testified that he and Ms. Angle engaged in consensual sex on November 8, 10 and 11. He provided detailed descriptions of the sexual activity. He admitted to excessive drinking and extensive consumption of crack cocaine by both himself and Ms. Angle. (TT2 502; 506-8; 520-21; 530)

On November 8, they had consensual sex, including anal intercourse. (TT2 508)

On November 10, they had consensual sex, including anal intercourse. (TT2 531-22)

Mr. Guster testified that on November 11, he and Ms. Angle smoked crack and had sex. (TT2 532) He drank from a bottle of Peppermint Schnapps. (TT2 532) Mr. Guster jokingly asked "would the kitty like a drink?" (TT2 533) Ms. Angle then took the bottle and inserted it into her vagina. (TT2 533) They engaged in consensual anal sex. (TT2 534)

When Ms. Angle went to the bathroom, Mr. Guster began thinking about his drug use, his job, and his probation (for a drunk driving case). (TT2 536) He felt disgusted by the fecal matter he found around the bed. (TT2 535) Believing that Ms. Angle contributed to his drug problem, he decided that he would have to break up with her.

When Ms. Angle returned from the bathroom, Mr. Guster told her that she'd have to leave. (TT2 536) She responded by running naked from the room. (TT2 539).

II

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A

First, Petitioner contends that he is entitled to habeas relief because he was not given a proper polygraph examination in accordance with his request under Mich. Comp. Laws § 776.21(5). Michigan law provides that a defendant who is charged with first or second-degree criminal sexual conduct or several other sex offenses shall be given a polygraph examination or lie detector test if he or she requests one. § 776.21(5). However, even when a defendant passes a polygraph examination, the results are inadmissible at trial under Michigan law. *People v. Phillips*, 666 N.W.2d 657, 661 (Mich. 2003) (internal citations omitted); *People v. Jones*, 662 N.W.2d 376, 381 (Mich. 2003).

The record indicates that Petitioner was given a polygraph examination upon his request, but that the examination was not conducted in accordance with the parameters set by the trial court. The trial court refused to order a second polygraph examination or to dismiss the charges, but ruled that the results of the first polygraph examination and Petitioner's concomitant statements were inadmissible at trial.

It is well-established that federal habeas relief may not be based upon a perceived violation of state law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Moreover, the United States Supreme Court has never held that, as a constitutional matter, polygraph evidence must be admitted in any criminal trial or that polygraph evidence is reliable. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308, n.8 (6th Cir. 1999) (noting that the Supreme Court in *Scheffer* "acknowledged that there is no consensus in the scientific

community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials"). The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review. *See Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (collecting cases); *see also Poole v. Perini*, 659 F.2d 730, 734-35 (6th Cir. 1981). In conclusion, Petitioner's claim alleges a violation of state law and he is not entitled to federal habeas relief on this claim.

B

Second, Petitioner contends that he is entitled to habeas relief because the trial court erred in denying his motion to suppress his statements. Petitioner contends that he was too intoxicated to knowingly, intelligently, and voluntarily waive his *Miranda* rights at the time of his arrest and that his statements were therefore involuntary.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements. A defendant's waiver of his *Miranda* rights must be found, based upon the totality of the circumstances, to be voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Courts have generally found that no single factor of the accused individual's characteristics is dispositive when deciding whether a valid waiver of rights was executed. Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him is correct unless the petitioner shows otherwise by clear and convincing evidence.

*See Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000); *see also Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Circumstances considered include:

> . . . not only the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health. They also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (internal citations omitted). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 (stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). Coercion may be psychological, as well as physical. *See Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). The burden of proving that a confession was involuntary rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

The Michigan Court of Appeals denied relief on this claim, finding that Petitioner knowingly, intelligently, and voluntarily waived his *Miranda* rights and that he failed to establish that his police statement was involuntary. The court explained in relevant part:

> The record adequately supports that defendant knowingly, intelligently and voluntarily waived his *Miranda* rights. While it is undisputed that defendant had been consuming alcohol and drugs, the record shows that the detective followed proper procedure to determine defendant's capacity to effectively waive his rights before interviewing defendant, and obtained defendant's waiver and statement absent coercion. The record also shows that defendant was able to give detailed testimony regarding the events that occurred the day of his arrest. Further, intoxication is only one aspect of the totality of the circumstances approach to assessing voluntariness, and is not dispositive of the issue of voluntariness. *People v. Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988); *People v. Leighty*, 161 Mich App 565, 571; 411 NW2d 778 (1987). We decline to find that the trial court erred under these circumstances.
>
> Defendant also claims error on the trial court's part because the interrogating officer's testimony at trial was contradictory to that at defendant's preliminary exam. We note that this argument does not have any bearing on the trial court's decision to deny defendant's motion to suppress his statement. . . . Nor do the contradictions establish that defendant's statement was involuntary.

*Guster*, 2005 WL 2171434, at *1-2.

The Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. While Petitioner may have consumed alcohol and ingested cocaine in the hours before his arrest, there is no indication that he was so impaired that he was unable to knowingly, intelligently, and voluntarily waive his rights. At the suppression hearing, Sergeant Edwards testified that Petitioner's interrogation occurred about three and one-half hours after his arrest and lasted thirty to thirty-five minutes. Petitioner was advised of his *Miranda* rights and affirmed that he understood those rights and wanted to speak with the police. Sergeant Edwards testified that Petitioner reported drinking two beers and four ounces of gin, but denied using drugs. Sergeant Edwards also testified that Petitioner seemed to understand

-11-

his questions, gave coherent and appropriate responses, and did not stumble or slur his words. The trial court found the officer's testimony credible, noted that Petitioner was able to give a detailed account of his activities on the day in question, and concluded that Petitioner knowingly and voluntarily waived his rights and spoke to the police. The trial court's credibility determination in this regard is presumed correct. *See Miller*, 474 U.S. at 112. Petitioner has not offered evidence to overcome this presumption. He has thus failed to establish a *Miranda* violation.

Moreover, Petitioner has failed to allege any facts indicative of police coercion or to otherwise demonstrate that his statement was involuntary. Petitioner was forty-one years old at the time of his arrest and had prior involvement with the criminal justice system. He was in custody for approximately three and one-half hours before making his statement and the interrogation only lasted thirty to thirty-five minutes. Although Petitioner may have consumed alcohol and cocaine prior to his arrest, he has not shown that he was too impaired to speak with police, or that he was deprived of food, water, sleep, or any other necessity for a significant period of time while in custody. Petitioner has not demonstrated that his police statement was involuntary and habeas relief is not warranted on this claim.

C

Third, Petitioner contends that he is entitled to habeas relief because the trial judge committed misconduct during trial by referring to Petitioner's girlfriend as "the victim"; by stating during jury voir dire that the case involved criminal sexual conduct and "graphic details unfortunately of what happened in this case"; and by stating that Petitioner's residence was for low-income people, was close to downtown, and was near a mental health center. Petitioner contends that the judge's comments exhibited bias against him and prejudiced the defense.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which strongly suggests to the jury that the judge disbelieves the defendant's case or otherwise favors the prosecution. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). To violate a defendant's right to a fair trial, a trial judge's intervention in the trial must be significant and must be adverse to the defendant to a substantial degree. *See McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *see also Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (state trial judge's behavior must render the trial fundamentally unfair to warrant habeas relief).

The Michigan Court of Appeals denied Petitioner relief on this claim, stating as follows:

> Defendant also argues that the trial court committed misconduct during the trial. We disagree. We review claims of judicial misconduct to determine whether the trial judge's statements evidenced partiality that could have prejudiced the jury against the defendant. *People v. Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). This Court reviews the record as a whole, and may not take portions of the record out of context. *People v. Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995).
>
> A criminal defendant has the right to have his case heard by a " 'neutral and detached magistrate." ' *Cheeks, supra* at 480, quoting *People v. Moore*, 161 Mich App 615, 619; 411 NW2d 797 (1987). A trial judge pierces the veil of judicial impartiality where his conduct or comments unduly influence the jury and thereby deprive the defendant of a fair and impartial trial. *Paquette, supra* at 340.
>
> Defendant first argues that the trial court erred by referring to the complaining witness as "the victim," and contends that this expressed to the jury the trial court's

-13-

belief that the complaining witness did not consent, and was indeed a victim of defendant. MCL 750.520a defines a "victim" as "the person alleging to have been subjected to criminal sexual conduct." The trial court referred to the complaining witness as "the victim," in this context. Further we note that before trial, the trial judge instructed the jury that her words were not meant to reflect her own personal opinions about the facts of the present case. "It is well established that jurors are presumed to follow their instructions." *People v. Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant also argues that the trial court committed misconduct by making the following statements during voir dire: "this type of case involving criminal sexual conduct," and "we are dealing with criminal sexual conduct and it's gonna be involved (sic) graphic details unfortunately of what happened in this case." Defendant also objected to the trial court's remarks during voir dire that defendant's place of residence was for low-income people, some of whom may have a difficult time finding a place to live elsewhere, that it was close to downtown, and that it was close to services such as Community Mental Health. Defendant argues that these comments interject the possibility that defendant is mentally ill, which he contends is irrelevant and prejudicial, and may lead the jurors to believe that he is more likely to commit a sexual offense.

In *People v. Sawyer*, 215 Mich App 183, 186-187; 545 NW2d 6 (1996), this Court stated:

> A defendant who chooses to be tried by a jury has a right to a fair and impartial trial. *Duncan v. Louisiana*, 391 US 145; 88 S Ct 1444; 20 LEd2d 491 (1968); *People v. Miller*, 411 Mich 321, 326; 307 NW2d 335 (1981). The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially. *People v. Brown*, 46 Mich App 592, 594; 208 NW2d 590 (1973). In ensuring that voir dire effectively serves this function, the trial court has considerable discretion in both the scope and conduct of voir dire. *People v. Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994); MCR 6.412(C). What constitutes acceptable and unacceptable voir dire practice "does not lend itself to hard and fast rules." *Id.* at 623. Rather, trial courts must be allowed "wide discretion in the manner they employ to achieve the goal of an impartial jury." *Id.* [Emphasis in original.]

The record shows that the trial court's comments were made to ascertain whether the potential jurors could be fair and impartial given the explicit nature of the allegations against defendant, and whether any potential juror harbored any bias based upon the fact that the victim and defendant lived at the Berridge Hotel. The trial court's line of questioning included an inquiry into whether that information would affect the

-14-

> juror's ability to judge credibility, whether it caused them any concern, or affected their ability to be impartial. In addition, both the prosecutor and defense counsel also asked the same types of questions of the potential jurors. Further, at the close of the trial, the trial court instructed the jury that its comments did not constitute evidence, and stated, "[i]f you believe I have an opinion about how you should decide the case, you must pay no attention to that opinion. You and you alone, members of the jury, are the judges of the facts of the case and you should decide the case based upon the evidence." We find that the trial court's comments did not pierce the veil of impartiality or deprive defendant of a fair trial.

*Guster*, 2005 WL 2171434, at *2-3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not demonstrated that the trial court was biased or prejudiced against him or the defense case. First, the trial judge's references to Patricia Angle as "the victim" were appropriate under state law which defines a "victim" as "the person alleging to have been subjected to criminal sexual conduct." Mich. Comp. Laws § 750.520a. Moreover, the judge specifically instructed the jurors that they should not consider her statements as expressing any personal opinion about the case and that they should decide the case based upon the evidence presented at trial. Jurors are presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Given such circumstances, the trial court's references to Ms. Angle as "the victim" did not deprive the Petitioner of his right to an impartial judge or his right to a fair trial.

Second, the trial court's voir dire comments concerning the nature of the crime and the living arrangements of Petitioner were appropriate and intended to ascertain whether the jurors would be fair and impartial in deciding the case. While the judge could have arguably worded her comments

more carefully, a review of the record fails to establish that she exhibited bias against Petitioner or his defense, or that she favored the prosecution. The judge properly instructed the jury that her comments were not meant to reflect her own opinions about the case, thereby alleviating any potential for the jury to misconstrue her comments. Petitioner has not established that the trial court engaged in misconduct or otherwise deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

D

Fourth, and finally, Petitioner asserts that he is entitled to habeas relief due to the cumulative effect of the alleged errors at trial. The Michigan Court of Appeals denied relief on this claim because it found no underlying error. *Guster*, 2005 WL 2171434, at *4. Indeed, Petitioner cannot establish that habeas relief is warranted based upon cumulative error because he has failed to demonstrate any underlying constitutional violation. Furthermore, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is therefore not warranted on this claim.

III

Based on the foregoing, the Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.  When a district court denies a habeas petition on procedural grounds, the petitioner must also demonstrate that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition.  *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).  For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right or that the procedural ruling is debatable.  The Court will also deny Petitioner leave to appeal in forma pauperis, because the appeal would be frivolous.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, and that Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 7, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 7, 2009.

s/Tracy A. Jacobs  
TRACY A. JACOBS